UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,              :
                                         :
              Plaintiff,                 :
                                         :
vs.                                      :   Case No. 4:19-cv-0191
                                         :
IWALA INC.,                              :
a Missouri corporation,                  :
                                         :
              Defendant.                 :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, IWALA INC., a Missouri corporation (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, Best Western Plus, has an address of 1425 South Fifth Street, St. Charles, Missouri 63301, and is located in the County of St. Charles ("Best Western Plus").

3.      Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      The place of public accommodation that the Defendant owns, operates, leases or leases to is Best Western Plus.

7.      Best Western Plus is a place of public accommodation.

8.      Defendant is responsible for complying with the obligations of the ADA.

9.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.      Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

11.      Plaintiff Fred Nekouee has visited the St. Louis area near the Best Western Plus in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; September 2018; and January 2019.

12.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Best Western Plus which forms the basis of this lawsuit where he checked in on July 10, 2018 and checked out on July 11, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area but he is deterred from doing so until the barriers to access are removed.   He has definite plans to return to the St. Louis area in March 2019.

13.     The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Best Western Plus near the heavy equipment dealerships he visits.

14.     For the reasons set forth in paragraphs 10 through 13 and 23 of this Complaint, Mr. Nekouee plans to return to the Best Western Plus.

15.     The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms and his use of the accessible guestroom 106-A in the Best Western Plus.

16.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

17.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

18.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

19.     On his visit to the Best Western Plus, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

20.     The Plaintiff encountered barriers to access the restrooms in the accessible rooms of the Best Western Plus.

21.     The Plaintiff is deterred from visiting the Best Western Plus, even though the Best Western Plus is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the restrooms, lobby, accessible room 106-A, parking lot, access

aisles and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

22.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 26 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

23.     Fred Nekouee desires to visit the Best Western Plus not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

24.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

25.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

26.     Preliminary inspections of the Best Western Plus have shown that violations and barriers to access exist there.  The violations that Fred Nekouee personally encountered or observed on his visit to the Best Western Plus include, but are not limited to:


**PARKING AREA**

4

a.   (i) In the parking lot, there are no parking spaces for disabled individuals with van accessible signage.   (ii)   This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6. (iii) The Plaintiff observed this lack of van accessible signage, and it deters him from visiting Best Western Plus.   (iv) The action required to install such signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot, the middle section of the parking space for disabled patrons shown in the photograph below has a running slope as steep as about 1:32.3 (3.1%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff observed this slope, and it deters him from visiting Best Western Plus.   (iv)   The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.





c.  (i)   In the parking lot, the front section of the parking space (oriented closest to the sign) for disabled patrons shown in the photograph below has a running slope as steep as about 1:25 (4%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) While moving in his wheelchair, the Plaintiff encountered this slope and it made his wheelchair unstable.   (iv) The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.





d.  (i) In the parking lot, the front section of the parking space (closest to the sign) for disabled patrons shown in the photograph below has a running slope as steep as about 1:21.3 (4.7%) and steeper than a slope of 1:48 (2%).   (ii) This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered this slope, and it made his wheelchair unstable.   (iv) The action required to make this parking space level is easily accomplishable and able to be carried out without much difficulty or expense.





e.  (i) In the parking lot, the running slope of the middle section of the access aisle serving the disabled parking spaces is as steep as about 1:25.6 (3.9%) and steeper than a slope of 1:48 (2%).  (ii)  This running slope in this access aisle is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) While moving in his wheelchair, the Plaintiff encountered this slope, and it made his wheelchair unstable, and it was very difficult for him to ascend this access aisle in his wheelchair.  (iv) The action required to make this access aisle level is easily accomplishable and able to be carried out without much difficulty or expense.

f.  (i) In the parking lot, the running slope of the front section of the access aisle (oriented closest to the sign) serving the parking spaces for disabled patrons shown in the photograph below is as steep as about 1:24.4 (4.1%) and steeper than a slope of 1:48 (2%) and its back section has a running slope as steep as about 1:32.3 (3.1%) and steeper than a slope of 1:48 (2%).  (ii)  These running slopes in this access aisle are steeper than the

maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) While moving in his wheelchair, the Plaintiff encountered these slopes, and it made his wheelchair unstable, and he required assistance to ascend this access aisle in his wheelchair.    (iv) The action required to make this access aisle level is easily accomplishable and able to be carried out without much difficulty or expense.





g.   (i) The cross slope of the walking surface in front of the main entrance is as steep as 1:17.9 (5.6%) and steeper than a slope of 1:48 (2%).   (ii) This cross slope of the walking surface in front of the main entrance is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep cross slope while moving in his wheelchair, and it caused his wheelchair to become unstable.   (iv) The action required to make this walking surface level is easily accomplishable and able to be carried out without much difficulty or expense.

**ENTRANCE DOOR, INTERIOR LOBBY AREA**

h.   (i) The force needed to open the door to the lobby is about 10 pounds and is greater than 5 pounds.   (ii) The force needed to open the door to the lobby exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force

necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the lobby, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to reduce the force necessary to fully open this door to the lobby is easily accomplishable and able to be carried out without much difficulty or expense.

i.   (i) The top surface of the counter in the lobby is about 47 inches above the floor and higher above the floor than 36 inches.   (ii) The top surface of the counter in the lobby is higher than 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 904.4.1.   (iii) Due to its height above the floor, the Plaintiff could not reach items on this counter from his wheelchair.   (iv) The action required to lower the counters in the lobby is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

j.   (i) The force needed to open the door to the men's restroom in the lobby is about 11 pounds and is greater than 5 pounds.   (ii) The force needed to open the door to the men's restroom in the lobby exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the men's restroom in the lobby, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to reduce the force necessary to fully open this door to the men's restroom in the lobby is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) In the men's restroom in the lobby, the accessible compartment door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 40 inches

11

and less than such a clearance of 60 inches.   (ii) This accessible compartment door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) The Plaintiff encountered this condition and it made it very difficult for him to maneuver his wheelchair to try and enter this compartment, and he required assistance to maneuver his wheelchair to enter this compartment.   (iv) The action required to increase this maneuvering clearance space is easily accomplishable and able to be carried out without much difficulty or expense.

l.   (i) In the men's restroom in the lobby, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 8 inches and less than 18 inches.   (ii) This door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) Due to this door pull side maneuvering clearance space, the Plaintiff required assistance to exit this restroom. (iv)   The action required to increase this door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway to 18 inches or greater is easily accomplishable and able to be carried out without much difficulty or expense.

m.   (i) In the men's restroom in the lobby, a door pull is not provided on both sides of the door to the accessible toilet compartment near the latch.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on this door, the Plaintiff had difficulty opening and closing this door.   (iv) The action required to provide a door pull on both sides of this door to the accessible toilet compartment near the latch is easily accomplishable and able to be carried out without

much difficulty or expense.

n.  (i) In the men's restroom in the lobby, the door to the accessible toilet compartment swings into the compartment area.  (ii) This accessible toilet compartment door swings into the minimum required compartment area, in violation of Federal Law 2010, ADAAG § 604.8.1.2.  (iii) The Plaintiff encountered this door, and due to this door swinging into an undersized toilet compartment, he required assistance to maneuver this wheelchair to enter this compartment.  (iv) The action required to change the configuration of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

o.  (i) In the men's restroom in the lobby, the accessible toilet compartment or stall is about 40 inches wide and less than 60 inches wide.   (ii) The width of this accessible toilet compartment is less than 60 inches, in violation of Federal Law 2010, ADAAG § 604.8.1 and 304.3.  (iii) The Plaintiff encountered this condition, and due to the narrow width of the accessible toilet compartment, he required additional assistance to maneuver this wheelchair to enter the compartment.   (iv) The action required to change the configuration of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

p.  (i) In the men's restroom in the lobby, there is no rear wall grab bar in the accessible toilet compartment.   (ii) This restroom does not have a rear wall grab bar in the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) The Plaintiff encountered this condition, and due to the accessible toilet compartment not having a rear wall grab bar, he required assistance to transfer from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar in this accessible toilet compartment is easily

accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the men's restroom in the lobby, the side wall grab bar in the accessible toilet compartment is about 31 inches long and less than 42 inches long.   (ii) The side wall grab bar in the accessible toilet compartment is less than the minimum required length of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the length of this side wall grab bar, the Plaintiff had great difficulty using it to help transfer himself from the toilet back to his wheelchair.   (iv) The actions required to change the configuration of the accessible toilet compartment and to install a side wall grab bar of proper length is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the men's restroom in the lobby, the side wall grab bar in the accessible toilet compartment to the right as one sits on the toilet only extends about 49 inches from the rear wall and less than 54 inches from the rear wall.   (ii) This side wall grab bar extends less than the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff encountered this condition, and it made it very difficult for him to transfer himself from the toilet back to his wheelchair and to use the side wall grab bar to help him transfer from his wheelchair to sit on the toilet. (iv) The action required to properly install a side wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the men's restroom in the lobby, the side wall grab bar to the left of the toilet oriented while sitting on the toilet only extends about 33 inches from the rear wall and less than 54 inches from the rear wall.   (ii) This side wall grab bar extends less than the required

minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff encountered this condition, and it made it very difficult for him to transfer himself from the toilet back to his wheelchair and to use this side wall grab bar to help him transfer from his wheelchair to sit on the toilet.   (iv) The action required to properly install a side wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the men's restroom in the lobby, as shown in the photograph below, the lavatory pipes under the sink are not insulated.   (ii) These lavatory pipes under the sink are not insulated, in violation of Federal Law 2010, ADAAG § 606.3.   (iii) Due to this lack of insulation on these pipes, the Plaintiff risked burns to the skin on his legs and injury when he used this sink from his wheelchair.   (iv) The action required to insulate these pipes under the sink is easily accomplishable and able to be carried out without much difficulty or expense.



u.  (i) In the men's restroom in the lobby, the wall-mounted paper towel dispenser has a leading edge more than 27 inches and not more than 80 inches above the floor and it protrudes horizontally into the circulation path more than 4 inches.   (ii) This wall-mounted paper towel dispenser has a leading edge more than 27 inches (685 mm) and not more than 80 inches (2030 mm) above the finish floor and protrudes horizontally into the circulation path more than 4 inches (100 mm), in violation of Federal Law 2010, ADAAG § 307.2. (iii) The Plaintiff encountered this wall-mounted paper towel dispenser while moving in his wheelchair, and was at risk of a head injury due to its horizontal protrusion into the circulation path.   (iv) The action required to replace or move this paper towel dispenser outside of the circulation path is easily accomplishable and able to be carried out without much difficulty or expense.

v.  (i) In the men's restroom in the lobby, the urinal rims are all about 26 inches above the floor and higher above the floor than 17 inches. (ii) These urinal rims are higher than 17 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 605.2.   (iii) In his wheelchair, the Plaintiff encountered these urinals, and due to the height of their rims above the floor, he could not use these urinals.   (iv) The action required to replace or move a urinal is easily accomplishable and able to be carried out without much difficulty or expense.

w.  (i) In the men's restroom in the lobby, the urinal flush controls are all about 58 inches above the floor and higher than 48 inches above the floor.   (ii) The urinal flush controls are all higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 605.4 and 309.   (iii) From his wheelchair, the Plaintiff observed these flush controls.   (iv) The action required to replace or move these flush controls is easily

accomplishable and able to be carried out without much difficulty or expense.

x.    (i) In the men's restroom in the lobby, the space between the top of the side wall grab bar in the accessible toilet compartment and the toilet paper dispenser above it is about 5 inches and less than 12 inches.   (ii) The space between this side wall grab bar and the toilet paper dispenser above it is less than 12 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Due to this lack of space between this side wall grab bar and the toilet paper dispenser above it, the Plaintiff had great difficulty trying to use this side wall grab bar to transfer from his wheelchair to the toilet and back again.   (iv) The action required to replace or move this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

y.    (i) In the men's restroom in the lobby, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet or toilet, and toilet paper is not dispensed in this range, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.   (iv) The action required to replace or relocate the toilet paper dispenser to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

z.    (i) In the men's restroom in the lobby, the distance from the centerline of the toilet in the accessible toilet compartment to the side wall is about 23 inches and not between 16 inches and 18 inches.   (ii) The distance from the centerline of this water closet or toilet in the accessible toilet compartment to the side wall is not between a minimum of 16 inches

(405 mm) and a maximum of 18 inches (455 mm), in violation of Federal Law 2010, ADAAG § 604.2.   (iii) The distance between the toilet and the side wall made it very difficult for Fred Nekouee to reach the side wall grab bar and the toilet paper.   He could not reach either from a normal sitting position on the toilet. (iv) The action required to relocate the toilet to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

aa.   (i) In the men's restroom in the lobby, the paper towel dispenser outlet is about 55 inches above the floor and higher than 48 inches above the floor.   (ii) This paper towel dispenser is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) From his wheelchair, the Plaintiff could not reach this paper towel dispenser outlet to activate its motion sensor to release a paper towel.   (iv) The action required to relocate this paper towel dispenser to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the men's restroom in the lobby, the toilet seat cover dispenser outlet is about 52 inches above the floor and higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) From his wheelchair, the Plaintiff could not reach a toilet seat cover due to the height of the toilet seat cover dispenser outlet above the floor.   (iv) The action required to relocate this toilet seat cover dispenser outlet to achieve compliance is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i)   In the men's restroom in the lobby, the door latch on the accessible toilet

compartment door requires tight grasping and pinching to operate and it cannot be opened with a closed fist or loose grip.   (ii) This door latch on the accessible toilet compartment door requires tight grasping and pinching to operate, in violation of Federal Law 2010, ADAAG §§ 309.7 and 404.2.7.   (iii) The Plaintiff could not operate this door latch with a closed fist or loose grip.  (iv)   The action required to replace this door latch is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the men's restroom in the lobby, the coat hook is about 65 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) Fred Nekouee observed the height of this coat hook above the floor, and it deters him from visiting Best Western Plus. (iv) The action required to adjust the height of this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN THE LOBBY**

ee.   (i) The force needed to open the door to the women's restroom in the lobby is about 9 pounds and is greater than 5 pounds.   (ii) The force needed to open the door to the women's restroom in the lobby exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the women's restroom in the lobby, the Plaintiff had difficulty opening this door and he required assistance in his wheelchair to open this door.   (iv) The action required to reduce the force necessary to fully open this door to the women's restroom in the lobby is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the women's restroom in the lobby, a door pull is not provide on both sides of the accessible toilet compartment door near the latch.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to install a door pull on both sides of the accessible toilet compartment door near the latch is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the women's restroom in the lobby, the door to the accessible toilet compartment swings into the compartment area.   (ii) This accessible toilet compartment door swings into the minimum required compartment area, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to change the configuration of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the women's restroom in the lobby, the accessible stall is about 38 inches wide and less than 60 inches wide.   (ii) The width of this accessible stall is less than 60 inches, in violation of Federal Law 2010, ADAAG § 604.8.1 and 304.3.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to change the configuration of this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In the women's restroom in the lobby, there is no rear wall grab bar in the accessible toilet compartment.   (ii) This restroom does not have a rear wall grab bar in the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.5.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.

(iv) The action required to install a rear wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

jj.  (i) In the women's restroom in the lobby, the side wall grab bar to the left of the toilet oriented while sitting on the toilet only extends about 50 inches from the rear wall and less than 54 inches from the rear wall.   (ii) This side wall grab bar extends less than the required minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to properly install a side wall grab bar in this accessible toilet compartment is easily accomplishable and able to be carried out without much difficulty or expense.

kk.. (i) In the women's restroom in the lobby, the space underneath the sinks is blocked by a trash bin and liquid soap containers.   (ii) The clear floor space underneath these sinks is blocked by a trash bin and liquid soap containers so that knee and toe clearance is not provided preventing an individual in a wheelchair from making a forward approach to the sinks, in violation of Federal Law 2010, ADAAG §§ 305 and 306.2.3.   (iii) The Plaintiff observed these conditions, and they deter him from visiting or staying at Best Western Plus. (iv) Written procedures should be developed that prevent trash bins from being placed under and near the restroom sinks.   (v) The action required to remove or relocate the   soap containers under these sinks is easily accomplishable and able to be carried out without much difficulty or expense.

ll.  (i) In the women's restroom in the lobby, the lavatory pipes under the sinks are not insulated as shown in the photograph below.   (ii) The lavatory pipes under these sinks are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   (iii)

The Plaintiff observed the lack of insulation on the lavatory pipes under these sinks and it deters him from visiting Best Western Plus and risking skin burns and injury to his legs. (iv) The action required to insulate the lavatory pipes under these sinks is easily accomplishable and able to be carried out without much difficulty or expense.



mm.      (i) In the women's restroom in the lobby, the space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is about 5 inches and less than 12 inches.   (ii) The space between the top of the side wall grab bar and the bottom of the toilet paper dispenser above it is less than the minimum required space of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 609.3.   (iii)   The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to relocate the toilet paper dispenser is easily accomplishable and able to be carried

out without much difficulty or expense.

nn.   (i) In the women's restroom in the lobby, the paper towel dispenser outlet is about 58 inches above the floor and higher than 48 inches above the floor.   (ii) This paper towel dispenser outlet is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1. (iii) The Plaintiff observed the height of this paper towel dispenser above the floor, and it deters him from visiting Best Western Plus. (iv) The action required to relocate this paper towel dispenser outlet is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the women's restroom in the lobby, the toilet seat cover dispenser outlet is about 54.5 inches above the floor and higher than 48 inches above the floor.   (ii) This toilet seat cover dispenser outlet in higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii)   The Plaintiff observed the height of this toilet seat cover above the floor, and it deters him from visiting Best Western Plus.   (iv) The action required to relocate this toilet seat cover dispenser outlet is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i) In the women's restroom in the lobby, the toilet in the accessible toilet compartment does not have the flush control mounted on the open and wide side of the clear floor space.   (ii) The flush control for this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus as it would be very difficult to flush the toilet from his wheelchair.   (iv) The action required to

23

install a flush control on this toilet on the open and wide side of the clear floor space is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the women's restroom in the lobby, the latch to the accessible toilet compartment door requires tight grasping and pinching to operate.   (ii) To operate this door latch requires tight grasping or pinching and it cannot be operated with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried operating this door latch, and he could not operate it with a closed fist or loose grip.   (iv) The action required to install a door latch on the accessible toilet compartment door that does not require tight grasping or pinching to operate easily accomplishable and able to be carried out without much difficulty or expense.

rr.   (i) In the women's restroom in the lobby, the coat hook is installed at about 67 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii)   The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting Best Western Plus.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

ss.   (i) In the breakfast area, the hot water machine dispenser handle is about 55 inches above the floor and higher than 48 inches above the floor.   (ii) This hot water machine dispenser handle is higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to its height above the floor, the Plaintiff could

not reach the handle to the hot water machine from his wheelchair. (iv) The action required to relocate the handle or to replace the hot water machine is easily accomplishable and able to be carried out without much difficulty or expense.

tt. (i) In the breakfast area, the coffee flask dispenser lever is about 54 inches above the floor and higher than 44 inches above the floor. (ii) This coffee flask dispenser lever is higher than 44 inches above the finish floor, where the reach depth is more than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) The Plaintiff encountered this condition, and due to its height above the floor, the Plaintiff, from his wheelchair, could not serve himself coffee. (iv) The action required to relocate the lever or to replace the coffee flasks is easily accomplishable and able to be carried out without much difficulty or expense.

uu. (i) In the breakfast area, the juice machine dispenser keys are about 59 inches above the floor and higher than 48 inches above the floor. (ii) These juice machine dispenser keys are higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) The Plaintiff encountered this condition, and due to its height above the floor, the Plaintiff, from his wheelchair, could not reach the dispenser keys to serve himself juice. (iv) The action required to relocate the juice machine or to replace the juice machine is easily accomplishable and able to be carried out without much difficulty or expense.

vv. (i) In the breakfast area, the sugar and sweetener holder is about 56 inches above the floor and higher than 48 inches above the floor. (ii) This holder is higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. (iii) The Plaintiff encountered this condition, and

due to its height above the floor, the Plaintiff, from his wheelchair, could not reach the sugar.  (iv) The action required to relocate or replace the sugar and sweetener holder is easily accomplishable and able to be carried out without much difficulty or expense.

ww.     (i) In the breakfast area, the handle to the mini-fridge is about 62 inches above the floor and higher than 48 inches above the floor.  (ii) This handle to the mini-fridge is higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to its height above the floor, the Plaintiff, from his wheelchair, could not reach the handle to the mini-fridge.  (iv) The action required to relocate the handle or the mini-fridge is easily accomplishable and able to be carried out without much difficulty or expense.

xx.   (i) In the breakfast area, the top two trays of the muffin and pastry container are higher than 44 inches above the floor.   (ii) These trays are higher than 44 inches above the finish floor, where the reach depth is more than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.   (iv) The action required to relocate or replace the muffin and pastry container is easily accomplishable and able to be carried out without much difficulty or expense.

yy.   (i) In the breakfast area, the top two utensil holders are higher than 44 inches above the floor.   (ii) These utensil holders are higher than 44 inches above the finish floor, where the reach depth is more than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of the utensil holders above the floor, the Plaintiff, from his wheelchair, could not reach a plastic knife.  (iv) The action required to relocate or

replace the utensil holders is easily accomplishable and able to be carried out without much difficulty or expense.

zz.    (i) In the breakfast area, the waffle batter cups on top of the batter dispenser are about 61 inches above the floor and higher than 48 inches above the floor.   (ii) These waffle batter cups are higher than 48 inches above the finish floor, where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to their height above the floor, the Plaintiff, from his wheelchair, could not reach the waffle batter cups.   (iv) The action required to relocate the waffle batter cups and to put a written policy in place not to place them on top of the batter dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

aaa.        (i) In the breakfast area, the coffee cups near the coffee flasks are about 54 inches above the floor and higher than 44 inches above the floor.   (ii) This handle to the mini-fridge is higher than 44 inches above the finish floor, where the reach depth is more than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff encountered this condition, and due to their height above the floor, the Plaintiff, from his wheelchair, could not reach the coffee cups.   (iv) The action required to relocate the coffee cups and to put a written policy in place so that they are placed within reach of an individual in a wheelchair is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 106-A**

bbb.        (i) In accessible guestroom 106-A, the guestroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 46 inches

27

and less than 60 inches.   (ii) This guestroom door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) In his wheelchair, the Plaintiff encountered this condition, and it was very difficult for him to maneuver his wheelchair in this space to try and exit the room on his own.   (iv) The action required to remedy this condition is easily accomplishable and able to be carried out without much difficulty or expense.

ccc.     (i) In accessible guestroom 106-A, the guestroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is about 14 inches and less than 18 inches.   (ii) This guestroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is less than the minimum required clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii)   In his wheelchair, the Plaintiff encountered this condition, and due to the lack of such maneuvering space it was very difficult for the Plaintiff to exit the room.   (iv) The action required to remedy this condition is easily accomplishable and able to be carried out without much difficulty or expense.

ddd.     (i) In accessible guestroom 106-A, the refrigerator door requires tight grasping and pinching to open and close it.   (ii) The refrigerator door requires tight grasping and pinching to open and close it, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff could not open and close this refrigerator door with a loose grip or closed fist.   (iv)   The action required to replace this refrigerator or its door is easily accomplishable and able to be carried out without much difficulty or expense.

eee.     (i)   In accessible guestroom 106-A, the wardrobe knob requires tight

28

grasping and pinching.   (ii)   The wardrobe knob requires tight grasping and pinching, in violation of Federal Law 2010 ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff tried to use this wardrobe and he could not open its doors with a closed fist or loose grip.   (iv) The action required to replace the door knobs to the wardrobe is easily accomplishable and able to be carried out without much difficulty or expense.

fff.   (i) In accessible guestroom 106-A, the clear floor or ground space between the beds and the walls is less than 30 inches.   (ii) The clear floor or ground space between the beds and the walls is less than 30 inches, in violation of Federal Law 2010, ADAAG § 305. (iii) In his wheelchair, the Plaintiff encountered these conditions.   (iv) The action required to move the beds further away from the walls is easily accomplishable and able to be carried out without much difficulty or expense.

ggg.   (i) In accessible guestroom 106-A, the water cups and ice bucket on top of the shelf are about 63 inches above the floor and higher than 48 inches above the floor. (ii) This condition is in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not reach these cups or ice bucket.   (iv) The actions required to place the water cups and ice bucket within reach of an individual in a wheelchair and to put in place a written policy to do so are easily accomplishable and able to be carried out without much difficulty or expense.

hhh.   (i) In accessible guestroom 106-A, the night lamp switch is about 57 inches above the floor and higher than 48 inches above the floor.   (ii) This switch is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not reach this light switch.   (iv) The action required to relocate this

night lamp switch is easily accomplishable and able to be carried out without much difficulty of expense.

iii.    (i) In accessible guestroom 106-A, the iron on the shelf in the wardrobe is about 63 inches above the floor and higher above the floor than 48 inches.   (ii) This iron on this shelf is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not reach this iron.   (iv) The action required to relocate this shelf and iron are easily accomplishable and able to be carried out without much difficulty or expense.

jjj.    (i) In accessible guestroom 106-A, the light switch on the wall is about 54 inches above the floor and higher than 48 inches above the floor.   (ii) This light switch on the wall is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not reach this light switch.   (iv) The action required to relocate this light switch is easily accomplishable and able to be carried out without much difficulty or expense.

kkk.      (i) In accessible guestroom 106-A, the night stand light switch is about 57 inches above the floor and higher above the floor than 48 inches.   (ii) This night stand light switch is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff could not reach this night stand light switch.   (iv) The action required to relocate this night stand light switch is easily accomplishable and able to be carried out without much difficulty or expense.

lll.    (i) In accessible guestroom 106-A, the bottom end of the drapery pull rod is about 59 inches above the floor and higher than 48 inches above the floor.   (ii) The bottom end

of this drapery pull rod is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach this drapery pull rod.   (iv) The action required to relocate or replace this drapery pull rod is easily accomplishable and able to be carried out without much difficulty of expense.

mmm.      (i) In accessible guestroom 106-A, the bottom edge of the mirror's reflecting surface is about 43 inches above the floor and higher than 35 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 35 inches (890 mm) above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii)   From his wheelchair, the Plaintiff could not see his full face in this mirror due to the height of its reflecting surface above the floor.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 106-A**

nnn.       (i) For the restroom in accessible guestroom 106-A, the door pull side maneuvering clearance in a front approach perpendicular to the doorway is about 50 inches and less than 60 inches.   (ii) This door pull side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 60 inches, in violation of Federal Law 2010, ADAAG  404.2.4.   (iii) The Plaintiff encountered this maneuvering clearance space and it made it difficult for him to maneuver his wheelchair to enter the restroom.   (iv) The action required to increase this door pull side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

ooo.     (i) In the restroom in accessible guestroom 106-A, the restroom door push side maneuvering clearance in a front approach perpendicular to the doorway is about 41 inches and less than 48 inches.  (ii) This restroom door push side maneuvering clearance in a front approach perpendicular to the doorway is less than the minimum required clearance of 48 inches, in violation of Federal Law 2010, ADAAG  404.2.4.  (iii) The Plaintiff encountered this condition and it made it difficult for him to maneuver his wheelchair to exit the restroom.  (iv) The action required to increase this door push side maneuvering clearance is easily accomplishable and able to be carried out without much difficulty or expense.

ppp.     (i) In the restroom in accessible guestroom 106-A, the clearance length parallel to the bathtub is about 22 inches and less than 30 inches, and is less than the length of the bathtub since the toilet is located next to the bathtub.  (ii) The clearance in front of the bathtub does not extend the length of the bathtub and is not a minimum of 30 inches (760 mm) wide, in violation of Federal Law 2010, ADAAG § 607.2. (iii) The Plaintiff encountered this narrow clearance width in front of the bathtub, and due to it, he required assistance to enter the bathtub.  (iv) The action required to provide clearance in front of the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

qqq.     (i) In the restroom in accessible guestroom 106-A, a permanent seat at the head end of the bathtub or an accessible removable in-tub seat is not provided.  (ii) This lack of seating is in violation of Federal Law 2010, ADAAG § 607.3.  (iii) The Plaintiff encountered this lack of seating in this bathtub, and due to it, he required assistance to bathe.  (iv) The action required to provide accessible seating in this bathtub is easily

accomplishable and able to be carried out without much difficulty or expense.

rrr.   (i) In the restroom in accessible guestroom 106-A, the shower/bathtub controls and shower spray unit are not located between the centerline of the bathtub and the open side of the bathtub.   (ii) These controls and the shower spray unit are not located between the centerline and open side of the bathtub, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5.   (iii) The Plaintiff encountered these controls and spray unit, and due to their location, he could not operate them without assistance.   (iv) The actions required to relocate these controls and shower spray unit are easily accomplishable and able to be carried out without much difficulty of expense.

sss.       (i) In the restroom in accessible guestroom 106-A, the knob or valve to control the water to the bathtub is not operable with one hand and requires tight grasping, pinching or twisting of the wrist.   (ii) This condition is in violation of Federal Law 2010, ADAAG §§ 607.5 and 309.4.   (iii) The Plaintiff tried but could not operate this water control valve to the bathtub with a closed fist or loose grip.   (iv) The action required to replace this water control valve to the bathtub is easily accomplishable and able to be carried out without much difficulty or expense.

ttt.   (i) In the restroom in accessible guestroom 106-A, the shower spray unit is about 70 inches above the bathtub floor and higher than 48 inches above the bathtub floor.   (ii) This shower spray unit is higher than 48 inches above the bathtub floor, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2.   (iii) The Plaintiff encountered this condition, and he could not reach this shower spray unit to adjust it.   (iv) The actions required to put in place a written policy that after a guest leaves that the shower spray unit shall be returned to a height of 48 inches or less is easily accomplishable and able to be

carried out without much difficulty or expense.

uuu.     (i) In the restroom in accessible guestroom 106-A, there is no rear wall grab bar behind the toilet as shown in the photograph below.   (ii) This lack of a rear wall grab bar is in violation of Federal Law 2010, ADAAG § 604.5.   (iii) The Plaintiff encountered this lack of a rear wall grab bar on the wall behind the toilet, and due to this condition, he required assistance to transfer himself from his wheelchair to the toilet.   (iv) The action required to install a rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.



vvv.     (i) In the restroom in accessible guestroom 106-A, the sink does not have clear floor or ground space underneath it.   (ii) Toe and knee clearance is not provided under this sink, in violation of Federal Law 2010, ADAAG §§ 306.2.3 and 306.3.3.   (iii)

In his wheelchair, the Plaintiff encountered this lack of toe and knee clearance under the sink and he could not make a forward approach to this sink to use it.  (iv) The action required to provide toe and knee clearance under this lavatory sink are easily accomplishable and able to be carried out without much difficulty or expense.

www.      (i) In the restroom in accessible guestroom 106-A, the lavatory pipes under the sink are not insulated.  (ii) The lavatory pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.  (iii) The Plaintiff observed this condition, and it deters him from visiting Best Western Plus.  (iv)  Once knee and toe clearance is provided under this sink, installing insulation on the lavatory pipes under the sink is easily accomplishable and able to be carried out without much difficulty or expense.

xxx.      (i) In the restroom in accessible guestroom 106-A, the centerline of the toilet paper dispenser is not between 7 and 9 inches from the front of the water closet or toilet.  (ii) The centerline of the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.  (iii) The Plaintiff tried but could not reach this toilet paper dispenser from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

yyy.      (i) In the restroom in accessible guestroom 106-A, the bottom edge of the magnifying mirror's reflecting surface is about 54 inches above the floor and more than 40 inches above the floor.  (ii) This mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.  (iii) From his wheelchair, the Plaintiff tried but could not reach this mirror to use it and he could not see

his face in this mirror due to the height of its reflecting surface above the floor.   (iv) The action required to relocate this magnifying mirror is easily accomplishable and able to be carried our without much difficulty or expense.

zzz.      (i) The door knob to the restroom in accessible guestroom 106-A requires tight grasping, pinching, or twisting of the wrist to operate.   (ii) The operation of this door knob requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff tried but could not open this door using this door knob with a loose grip or closed fist.   (iv) The action required to replace this door knob is easily accomplishable and able to be carried out without much difficulty or expense.

aaaa.      (i) In the restroom in accessible guestroom 106-A, the coat hook is about 65 inches above the floor and higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) From his wheelchair, the Plaintiff could not use this coat hook due to its height above the floor.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

bbbb.      (i) In the restroom in accessible guestroom 106-A, the towel holder rod is about 59 inches above the floor and higher than 48 inches above the floor.   (ii) This towel rod is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not use this towel rod due to its height above the floor.   (iv) The action required to relocate this towel rod is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

cccc.      (i) The force needed to open the door to the pool area is about 11 pounds and is greater than 5 pounds.  (ii) The force needed to open the door to the pool area exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the pool area, the Plaintiff required assistance in his wheelchair to open this door.   (iv) The action required to reduce the force necessary to fully open this door to the pool area is easily accomplishable and able to be carried out without much difficulty or expense.

dddd.      (i) The change in elevation at the door threshold to the pool area is about 2 inches and greater than 0.75 of an inch.   (ii) This change in elevation at the door threshold to the pool area is greater than 0.75 of an inch, in violation of Federal Law 2010, ADAAG § 404.2.5.  (iii) Due to this high threshold, the Plaintiff required assistance to help him move his wheelchair over this threshold to enter the pool area.   (iv) The action required to reduce the elevation of this threshold is easily accomplishable and able to be carried out without much difficulty or expense.

eeee.      (i) Near the entrance to the pool area and within 60 inches of the entrance door, the cross slope of the walking surface is as steep as about 1:19.6 (5.1%) and steeper than a slope of 1:48 (2%).   (ii) The cross slope of this walking surface is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §§ 403.3 and 404.2.4.4.   (iii) Once the Plaintiff entered the pool area, his wheelchair slipped sideways due to this steep cross slope.   Due to this steep cross slope near the entrance door, in his wheelchair, the Plaintiff also had difficulty exiting the pool area.   (iv) The

action required to level this cross slope is easily accomplishable and able to be carried out without much difficulty or expense.

ffff.      (i) The cross slope of the walking surface around the pool is as steep as 1:17.5 (5.7%) and steeper than a slope of 1:48 (2%).   (ii) The cross slope of the walking surface around the pool is steeper than 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The Plaintiff encountered this steep slope while moving in his wheelchair, and the cross slope of the walking surface around the pool made his wheelchair unstable.

gggg.      (i) The door card reader at the entrance to the pool area is higher than 48 inches above the floor.   (ii) This door card reader is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 404.27 and 603.4.   (iii)       Due to its height above the floor, the Plaintiff could not use this card reader.   (iv) The action required to relocate this card reader is easily accomplishable and able to be carried out without much difficulty or expense.

27.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

28.    The discriminatory violations described in paragraph 26 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

29.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

30.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.   Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

31.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

32.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

33.     Defendant is required to remove the existing architectural barriers to the physically

disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

34.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

35.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Best Western Plus and adjacent parking lot spaces, access aisles and walkways, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*